# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

C.M.J., by and through D.L.J., as Next
Friend, Parent and Natural Guardian and
D.M.J., by and through D.L.J., as Next
Friend, Parent and Natural Guardian,

        **Plaintiffs,**

v.                                                      **Case No:   6:14-cv-1898-Orl-22GJK**

**WALT DISNEY PARKS AND
RESORTS US, INC.,**

        **Defendant.**

_____

## ORDER

This cause is before the Court on Plaintiffs' Motion to Review Bill of Costs, filed on November 1, 2016. The United States Magistrate Judge has submitted a report recommending that the Motion be granted in part and denied in part.

After an independent *de novo* review of the record in this matter, including the objections to the findings of fact and conclusions of law in the Report and Recommendation filed by Defendant Walt Disney Parks and Resorts US, Inc., and Plaintiffs' Response, the Court sustains Defendant's objections in part and awards reduced costs against Plaintiffs C.M.J. and D.M.J., by and through D.L.J. as their next friend, parent, and natural guardian.

## I.     BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant is one of the world's most popular amusement parks, comprised of four parks with more than one hundred rides and attractions. Plaintiff is one of more than forty developmentally disabled plaintiffs who brought suit against Defendant, alleging violations of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*[1] These plaintiffs sued Defendant for claims arising out of changes made in 2013 to Defendant's system for providing access to the rides for its guests with cognitive disabilities. Fourteen plaintiff families initially brought their claims in a single lawsuit; however, on October 30, 2014, the court severed the cases.[2] Additionally thirty other plaintiff families were permitted to file separate suits,[3] which included the claim of at least one developmentally disabled plaintiff (brought by a next friend-parent) who contended that Disney's Disability Access Service—its current program for accommodating disabled visitors at its various theme parks—caused discrimination in violation of the ADA. A few of the plaintiffs also pled claims under a specific California anti-discrimination law that the Court permitted to proceed. An additional number of cases included various California common-law claims arising out of the alleged discrimination; however, the Court declined to exercise supplemental jurisdiction over the California common-law claims[4] that accompanied Plaintiffs' ADA claims, and these claims were dismissed in the relevant cases in February 2015.

In September 2016, the Court granted summary judgment to Defendant, holding that Defendant's implementation of its Disability Access Service and discontinuance of the Guest Assistance Cards did not violate the ADA by failing to accommodate the plaintiffs. The Clerk entered the judgment in favor of Defendant in the respective cases the following day. The final judgment ordered in this case on September 26, 2016 provided that Plaintiffs "shall recover nothing on their claims and the Defendant shall recover costs from Plaintiffs." Doc. 86.

---

[1] The first-filed case is *A.L. v. Walt Disney Parks and Resorts U.S. Inc.*, Case No. 6:14-cv-1544-22GJK.
[2] *See* Case Nos. 6:14-cv-1890-Orl-22GJK through 6:14-cv-1901-Orl-22GJK.
[3] *See* Case Nos. 6:14-cv-1917-Orl-22GJK through 6:14-cv-1946-Orl-22GJK.
[4] The common law claims consisted of such claims as negligent and intentional infliction of emotional distress and breach of contract. The Court did permit the handful of claims under the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52, to proceed.

On October 21, 2016, Plaintiffs moved to alter or amend the Court's grant of summary judgment to Defendant, arguing that the ruling was partially favorable to Plaintiffs as to "certain important issues" and should not have reflected that Defendant's motion for summary judgment was granted in full. Doc. 88. On December 9, 2016, the Court denied Plaintiffs' Motion to Alter or Amend the Judgment, which maintained the original ruling that Defendant was the prevailing party in the case; thus, it was entitled to costs. Doc. 94.

Prior to the time that Plaintiffs filed the Motion to Alter Judgment, on October 11, 2016, Defendant had filed a proposed bill of costs. Doc. 87. The Clerk of Court taxed costs against Plaintiffs in the amount of $3,966.78 on October 25, 2016. Doc. 89. On November 1, 2016, Plaintiffs filed their Motion to Review Clerk's Action on Bill of Costs and Objections to Bill of Costs. *See* Doc. 90. Plaintiffs argue the Court should vacate the Clerk's bill of costs, because no *motion* to tax costs was filed[5]; Defendant failed to provide information to tax costs against each Plaintiff individually; and it would be inequitable to tax costs against incompetent, indigent Plaintiffs; alternatively, Plaintiffs argue for certain reductions in the bill of costs which would reduce it to approximately $2,165.

On November 17, 2016, Defendant responded to the Motion, which was subsequently referred to the magistrate judge. Doc. 92. On February 2, 2017, Magistrate Judge Kelly entered a Report and Recommendation recommending that the Court enter an order granting in part and denying in part the Motion, and awarding no costs against Plaintiffs or their Next Friend. Doc. 95. On February 16, 2017, Defendant filed its Objections to the Report and Recommendation (Doc.

---

[5]Plaintiffs also argued the Bill of Costs should be vacated because a Rule 59 post-judgment motion had been filed, the Court's order was non-final, and the Clerk's taxation of the bill of costs was premature. The Report and Recommendation found these arguments to be mooted by the Court's subsequent denial of the Rule 59 Motion and Plaintiffs have not addressed it further.

96) and Plaintiffs timely filed a Response to the Objections (Doc. 97). The matter is now ripe for decision.

## II. LEGAL STANDARDS

**A.** *Review of Magistrate Judge's Report & Recommendation*

In the Eleventh Circuit, a district judge may accept, reject or modify a magistrate judge's report and recommendation after conducting a careful and complete review of the findings and recommendations. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982). A district judge must conduct a *de novo* review of the portions of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1)(C). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id*. This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ*., 896 F.2d 507, 512 (11th Cir. 1990) (citing H.R.R ep. No. 94-1609, *as reprinted in* 1976 U.S.C.C.A.N. 6162, 6163). A district judge reviews legal conclusions *de novo*, even in the absence of an objection. *See Cooper-Houston v. Southern Ry*., 37 F.3d 603, 604 (11th Cir. 1994).

**B.** *Award of Costs*

Pursuant to Rule 54, "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Courts have discretion to award the costs specifically enumerated in 28 U.S.C. § 1920.[6] Rule 54 "establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with

---

[6]Allowable costs under § 1920 include: (1) fees of the clerk and the marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for the use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, interpreters, and salaries, fees, expenses and costs of special interpretation services. 28 U.S.C. § 1920.

discretion to decide otherwise." *Chapman v. AI Transport*, 229 F.3d 1012, 1038 (11th Cir. 2000) (citing Fed. R. Civ. P. 54(d)(1)); *see Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351 (1981)). "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so." *Holton v. City of Thomasville Sch. Dist.,* 425 F.3d 1325, 1355 (11th Cir. 2005) (quoting *Chapman*, 229 F.3d at 1038-39); *see Jessup v. Miami-Dade County*, No. 08-21571, 2011 WL 294417, at *1 (S.D. Fla. Jan. 27, 2011) ("The Eleventh Circuit Court of Appeals has provided courts in this Circuit with guidelines for determining whether and to what degree a district court can deny or reduce the award of reasonable costs to a prevailing party. Some of those guidelines are different from the guidelines prescribed in other Circuits."). As the Eleventh Circuit explained in its controlling case, *Chapman v. AI Transport*:

> However, the district court's discretion not to award the full amount of costs incurred by the prevailing party is not unfettered, *see Head v. Medford*, 62 F.3d 351, 354–55 (11th Cir. 1995), "since denial of costs is in the nature of a penalty for some defection on [the prevailing party's] part in the course of the litigation." *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977) (internal marks and citation omitted). To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so. *See Medford*, 62 F.3d at 354 (citing *Gilchrist v. Bolger*, 733 F.2d 1551, 1557 (11th Cir. 1984)); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). We review a district court's decision about costs only for abuse of discretion. *See Technical Resource Servs.*, 134 F.3d at 1468.

229 F.3d at 1038. The Eleventh Circuit cited the Fourth Circuit's decision *Cherry v. Champion International Corporation*, which observed that reliance on the

> parties' comparative economic power . . . would almost always favor an individual plaintiff . . . over [the corporate] defendant. . . . [T]he plain language of Rule 54(d) does not contemplate a court basing awards on a comparison of the parties' financial strengths. To do so would not only undermine the presumption that Rule 54(d)(1) creates in prevailing parties' favor, but it would also undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status.

186 F.3d 442, 448 (4th Cir. 1999) (quoted with approval in *Chapman*, 229 F.3d at 1038).

"[A] non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)." *Ang v. Coastal Int'l Sec., Inc.*, 417 F. App'x 836, 838 (11th Cir. 2011) (citing *Chapman*, 229 F.3d at 1038). "If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay," and a court may assess costs against a litigant who is proceeding *in forma pauperis*. *Id*. (citing 28 U.S.C. § 1915(f) (providing that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings" subject to certain exceptions); *Harris v. Forsyth*, 742 F.2d 1277, 1277–78 (11th Cir. 1984) (holding that appellate costs may be awarded under Fed. R. App. P. 39 against an unsuccessful litigant proceeding *in forma pauperis*)).

The non-prevailing party's "good faith and limited financial resources are not enough" to overcome the presumption the prevailing party is entitled to costs. *Pickett v. Iowa Beef Processors*, 149 Fed. Appx. 831, 832 (11th Cir. 2005). "Even in those rare circumstances where the non-prevailing party's financial circumstances are considered in determining the amount of costs to be awarded, a court may not decline to award any costs at all." *Chapman*, 229 F.3d at 1038 (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982) ("We hold that in no case may the district court refuse altogether to award attorney's fees to a prevailing Title VII defendant because of the plaintiff's financial condition," because "[a] fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence.")); *Jenner v. Bank of America Corp*., 304 Fed. Appx. 857, 860 (11th Cir. 2009) (citation omitted). Within these parameters—that the court should decline to award costs only in rare circumstances and there must be clear proof of the non-prevailing party's dire financial circumstances before that factor can be considered—the district court has the discretion to decide whether to reduce a cost award in a

particular case. *Id*. at 229 F.3d at 1038; *see* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2668 at 238-39 (4th ed. 2014) ("[T]he court may take into account the losing party's inability to pay costs, but the party must provide sufficient evidence to establish that inability or undue hardship to avoid paying costs and other courts have ruled that a disparity in wealth between the parties without undue hardship also is not a sufficient ground to deny costs."). The Court addresses below Plaintiffs' financial circumstances, cognizant that the Court should not completely waive costs, which provide a deterrent effect.

### III.   APPLICATION

#### A.  *Liability for Costs*

Defendant argues that the full amount of costs should be imposed on Plaintiffs C.M.J. and D.M.J., and on D.L.J. as their parent, guardian, and next friend who brought and controlled the lawsuit. Doc. 96. Plaintiffs argue that an award of costs against them would be inequitable. Plaintiffs also contend that taxation of costs against D.L.J., their next friend-parent, can be done only in the next friend's representative capacity, pursuant to Federal Rule of Civil Procedure 17(c)(2). Doc. 97. Plaintiffs further argue that, if costs are imposed, they should not be assessed jointly and severally against them.

In his Report & Recommendation, Judge Kelly recommended denying imposition of costs on the minor Plaintiffs and recommended that the Court decline to tax costs against their parent and next friend, D.L.J., because she is not a party to the action and therefore could not have costs taxed against her personally, but only as the next friend, parent, and natural guardian of C.M.J. and D.M.J. Doc. 95 at 4.

Federal Rule of Civil Procedure 17(c)(2) specifically provides that an infant or incompetent who does not have a general representative may sue by a next friend or a guardian ad litem; the

functions of the two representatives are "really much the same" and cases do not make a distinction about the formal title of the representative[7]. *Federal Practice and Procedure* § 1572 at 683. The guardian ad litem or next friend mentioned in Rule 17(c)(2) has always been deemed a nominal party only, and the ward is the real party in interest.[8] *See id.* at § 1548 at 522 (noting for purposes of diversity jurisdiction, the court uses the ward's citizenship rather than the guardian's). Thus, a minor child generally cannot bring a cause of action in his own right but may only sue by a representative, *i.e.,* the guardian ad litem or by his next friend, who is most often a parent. *See, e.g.,* Fla. R. Civ. P. 1.210(b)[9]; *Regency Health Services, Inc. v. Superior Court*, 64 Cal. App. 4th 1496 (Cal. Ct. App. 1998) (guardian ad litem "is not the real party in interest and no judgment can be entered either for or against the guardian") (citing *Sarracino v. Superior Court,* 13 Cal.3d 1, 13 (1974) ("A guardian ad litem who appears for an incompetent person in an action or proceeding does not thereby become a party to that action or proceeding any more than the incompetent person's attorney of record is a party. . . . The guardian ad litem, like the attorney, is both the incompetent's representative of record and a representative of the court.")).

A parent bringing a personal injury claim as next friend on behalf of a child acts as a *de facto* guardian ad litem, and is not the real party in interest insofar as the child's claims; the child

---

[7]Historically there was a difference in the terms guardian ad litem and next friend: "A guardian ad litem is a special guardian, appointed by the court to defend on behalf of an infant party. A next friend is one who, without being a regularly-appointed guardian, represents an infant plaintiff." *Federal Practice and Procedure* § 1572 at 683 n.10 (quoting *Till v. Hartford Acc. & Indem. Co.,* 124 F.2d 405, 408 (10th Cir. 1941)). However, "Rule 17(c)(2) permits suit to be brought on behalf of an infant by either." *Id.*

[8]The Court cites state law as examples, but federal law determines the outcome if there is a conflict. *See, e.g., Burke v. Smith*, 252 F.3d 1260, 1264-65 (11th Cir. 2001) (holding that Alabama state law regarding capacity to sue and settlement of a minor's claims would be applied where there was no conflict with federal law, Rule 17(c)).

[9]Florida Rule of Civil Procedure 1.210(b) reads:
   Minors or Incompetent Persons. When a minor or incompetent person has a representative, such as a guardian or other like fiduciary, the representative may sue or defend on behalf of the minor or incompetent person. A minor or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for a minor or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the minor or incompetent person.
Fla. R. Civ. P. 1.210(b).

is the real party in interest. *See, e.g., Dudley v. McCormick*, 799 So.2d 436, 440 (Fla. 1st DCA 2001) (affirming cost award against mother in her capacity as next friend bringing son's claim and individually) (citing Fla. Stat. § 744.301(2) and *Garner v. I.E. Schilling, Co.,* 174 So. 837, 839-40 (1937)); *Regency Health Services, Inc. v. Superior Court*, 64 Cal. App. 4th 1496 (Cal. App. 2d 1998) (holding real party in interest, an incompetent nursing home resident, was required to bear the costs of the petition on writ of mandate rather than the guardian ad litem who court noted was "not the real party in interest and no judgment can be entered either for or against" the guardian individually); *cf. Somerville v. United States*, No. 6:08-cv-787-Orl-22KRS, 2010 WL 3522046, *1 (M.D. Fla. Aug. 16, 2010) (in wrongful death suit brought by personal representative against the Veterans Administration, costs would be taxed against personal representative of the estate in that capacity and not against her personally, consistent with state law), *adopted*, 2010 WL 3522034 (M.D. Fla. Sep. 8, 2010) (Conway, J.). "It is the infant and not the next friend, who is the real and proper party. The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another." *Morgan v. Potter*, 157 U.S. 195, 197 (1895); *Muhammad v. Timmerman*, No. 8:14-cv-1005-T-23MAP, 2014 WL 1918601, *1 (M.D. Fla. May 13, 2014) (citing *Morgan* and denying next friend status where parent had failed to provide an explanation—such as mental incompetence or disability—to show why the real party in interest could not appear on her own behalf). *Cf. Whitmore v. Arkansas,* 495 U.S. 149, 163 (1990) ("A 'next friend' does not himself become a party" to the cause of action "in which he participates, but simply pursues the cause on behalf of . . . the real party in interest" applied to a habeas petition). In other words, the parent is asserting claims as the child's representative.

For more than a century, American courts have recognized that the liability for a cost judgment obtained against the next friend who filed suit on a minor's behalf, is actually the financial responsibility of the minor. *See Costs-Liability of Infant to Indemnify Next Friend*, 24 Harvard L. Rev. 319 (1911) (citing cases). While courts in the past had held the minor to be liable to indemnify the next friend, it is "best to hold the [minor] liable for costs primarily, as he is the real party in interest." *Id.* Modern cases impose liability for costs either directly on the minor, the real party in interest, or on the next friend or guardian in a representative capacity as one who controls the minor or ward's financial interests. *See, e.g., K.C. v. Schucker*, No. 02-2715, 2014 WL 11537828, at *2 (W.D. Tenn. Feb. 25, 2014) (where the claims of the minor plaintiff were prosecuted through her next friend-mother, who participated only in her representative capacity, any costs taxed in the case would be charged against the minor plaintiff and her mother as her representative, who would not have any personal liability for such costs), *affirming clerk of court's order taxing costs*, 2014 WL 11537834 (W.D. Tenn. Mar. 25, 2014). In recommending that costs not be taxed against Next Friend D.L.J. in this case, Magistrate Judge Kelly relied on the Florida appellate decision in *Watson v. State Farm Mutual Automobile Insurance Co.*, which held that the prevailing defendant could recover taxable costs only from the plaintiff, a minor child who was the real party in interest "by and through" her father, but was not entitled to recover the costs from her next friend-parent. 639 So. 2d 687, 688 (Fla. 2d DCA 1994).

In support of its claim against Next Friend D.L.J., Defendant argues that "courts have looked to the parent, guardian, or next friend who brought and controlled the lawsuit—as D.L.J. did here—to recover costs." Doc. 96 at 5. Defendant relies on the Eleventh Circuit's decision in *Ellis v. C.R. Bard, Inc.*, in which the court upheld the cost award against the guardian of a brain-damaged plaintiff who filed suit against medical equipment manufacturers. 311 F.3d 1272, 1288

(11th Cir. 2002). However, the decision in *Ellis* is more consistent with the argument regarding taxation of costs against the guardian or next friend in a *representative* capacity controlling the guardianship estate, in that the Eleventh Circuit explicitly stated the court had looked at evidence that Ellis "as guardian for" the incapacitated patient had "suffered from dire financial circumstances." *Id.* at 1288. In a footnote in the court's decision, the Eleventh Circuit noted it was "questionable whether the guardian" for the incapacitated individual "truly face[d] dire financial circumstances" given the $8 million structured settlement proceeds *she controlled as co-trustee in a trust account* for her brain-damaged mother. *Id.* at n.15 (emphasis added).

The case Defendant cites out of the Southern District of Florida, *Small v. Ford Motor Company*, is inapposite because the court rejected the guardian's request to waive $6,360 in costs completely—which had already been reduced significantly by more than $20,000 when certain categories of costs were disallowed—and the guardian had provided nothing to document plaintiff's financial status other than counsel's statement, which the court found insufficient to overcome the presumption that costs should be awarded to the prevailing party. No. 12-80841, 2015 WL 203178 (S.D. Fla. Jan. 14, 2015).

Defendant has cited distinguishable cases from *outside* the Eleventh Circuit (and this century[10]) which appear to allow a cost judgment to be imposed on the next friend, parent, or guardian who brought the case on behalf of a minor or disabled plaintiff. Doc. 92 at 7. In the Fifth Circuit decision of *Cypress-Fairbanks Independent School District v. Michael F.*, the court found that "the district court did not abuse its discretion" in taxing costs (reduced to $3,837) against the next friends-parents who sought to be reimbursed by their local public school district under the Individuals with Disabilities Education Act for their unilateral placement of their handicapped son

---

[10]The Court does not find helpful the 1913 case of *Reynolds v. Great N. Ry. Co.*, 206 F. 1003, 1004 (E.D. Wash. 1913) cited by Defendant.

in a residential treatment facility. 118 F.3d 245, 256, 257-58 (5th Cir. 1997). The same district judge who had not been reversed on the bill of costs issue in *Cypress-Fairbanks ISD*, felt bound to be consistent in assessing costs against the next friend-parent in the second case cited by Defendant, *Petri v. Kestrel Oil & Gas Props., L.P.*, No. H-09-cv-3994, 2013 WL 265973, at *5-6 (S.D. Tex. Jan. 17, 2013). However, even though the district court taxed costs against both the minor (who had reached the age of majority) and his parent—similar to *Ellis*—the costs taxed against the next friend-mother were taxed "as guardian and next friend" of the minor (and "in her capacity as administrator of the estate" of the deceased father).[11] *Id.* Notably, in neither case did the Fifth Circuit panel or the district court address or discuss the language of Federal Rule of Civil Procedure 17(c)(2) allowing a minor to sue by a next friend on behalf of the minor who is the real party in interest. *Cf. In re Gonzalez v. Reno*, 86 F. Supp. 2d 1167 (S.D. Fla. 2000) (unadmitted, minor alien was the real party in interest for purposes of bringing lawsuit), *aff'd*, 212 F.3d 1338, 1346. The last case Defendant cites, *Wilson ex rel. Adams v. Jackson*, which imposed $722 in costs (via 48 installments of $15 each) against the next friend-parent of the disabled minor for her "lack of good faith in bringing the case in the first place" is distinguishable because the court specifically noted that the lawsuit was frivolous and "[t]o rule otherwise would not provide a disincentive to filing meritless claims for indigent litigants and would punish a party that prevailed in a frivolous lawsuit" by denying it recovery of its costs. 2007 WL 2484688, at *3-4 (S.D. Ill. Aug. 30, 2007). In awarding costs in this case, taxation of costs against D.L.J. will be in her representative capacity as next friend of C.M.J. and D.M.J.

---

[11]The court in *Petri* specifically noted that the next friend-mother "ha[d] not cited any authority for not following the law regarding taxing costs against the losing party because it was a 'next friend.'" 2013 WL 265973, at *5-6.

Plaintiffs contend that there is no basis for assessing costs jointly and severally against both Plaintiffs, who are siblings; they argue that each Plaintiff should be taxed only 50% of the total costs. Doc. 90 at 7. Defendant argues that costs should be imposed jointly and severally against the two Plaintiffs in this case, as is the general rule. Doc. 92 at 12. "The default rule is that costs are to be imposed jointly and severally, and the burden is on the party seeking to avoid that to introduce evidence justifying apportionment and persuade the court to do that." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 586 (11th Cir. 2013) (citing *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 469 (3d Cir. 2000)). Plaintiffs in this case have not stated any basis for apportioning the costs between them. As Defendant points out, they brought the same claims, made the same arguments, took the same discovery, litigated this case the exact same way, and all costs incurred are attributable to both siblings. Taxation of costs against C.M.J. and D.M.J., by and through D.L.J. as next friend, parent and natural guardian, will be against them jointly and severally.

### B. Plaintiffs' Indigent Status

When the case was filed on Plaintiffs' behalf, no Application to Proceed *In Forma Pauperis* was filed, and the $400 filing fee was paid.[12] Doc. 1 (docket entry). However, as next friend, parent and natural guardian, D.L.J. has since filed on C.M.J. and D.M.J.'s behalf a Declaration stating that the children do not and will not ever have any assets, "have no income other than modest Social Security benefits," and that "they will never be income-producing or self-sufficient members of society or the marketplace." Doc. 90-1 at ¶¶ 6-9. She also lists their disabilities[13] of

---

[12]To the extent Plaintiffs' counsel argues that the Court's severance order *required* Plaintiffs to pay the fee, such argument is without merit in light of the federal statute applicable to every federal civil and criminal case allowing an application to proceed *in forma pauperis* in lieu of a filing fee. *See* 28 U.S.C. § 1915(a)(1).

[13]D.L.J. reaffirmed the statements in a previous Declaration, filed in opposition to Defendant's Motion for Summary Judgment, which accurately described her children's condition and some of the aberrant behaviors related to their conditions. Doc. 90-1.

severe autism, obsessive compulsive disorder, severe apraxia of speech, and global developmental delay. *Id.* at ¶¶ 3-4.

The Eleventh Circuit has directed in *Chapman* that "to defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." 229 F.3d at 1039. In this case, Magistrate Judge Kelly "decline[d] to consider Plaintiffs' financial ability to pay a costs judgment," but stated there was a sound basis for denying full costs and recommended that the Court exercise its discretion not to impose costs on Plaintiffs because "the equities favor not imposing costs on incompetent, disabled minors for a lawsuit brought by someone else on their behalf." Doc. 95 at 4.

District courts considering cost awards against non-prevailing parties who were disabled and subsisting on Social Security benefits have frequently taken into account the parties' reliance on Social Security disability payments, lack of employment, and indigent status in determining the cost award and ordered a significant reduction. *See, e.g.*, *Jessup v. Miami-Dade County*, No. 08-21571, 2011 WL 294417, *1 (S.D. Fla. Jan. 27, 2011) (reducing $36,800 cost award by 45%, rather than the recommended 75%, against non-prevailing party who was indigent); *Brown v. U.S. Dep't of Agriculture*, No. 6:06-cv1329-Orl-18UAM, 2008 WL 203382, at *2 (M.D. Fla. Jan. 23, 2008) (reducing cost award by 50% to $428 against plaintiffs who lived in low-income subsidized housing, including one whose sole source of income was Social Security and was indigent); *but see Seckel v. Hazelwood Bowl, LLC*, 2010 WL 561577, at *1 (E.D. Mo. Feb.10, 2010) (reducing costs to $0 for indigent plaintiff whose income consisted of Social Security benefits); *Cross v. Roadway Express*, No. 93 C 2584, 1994 WL 592168, *1 (N.D. Ill. Oct. 26, 1994) (waiving costs against indigent non-prevailing plaintiff who was an unemployed single parent to three children, suffered from severe mental health problems, and received $840 a month in Social Security

payments). In this case, the remaining question is the degree to which Defendant's award of reasonable costs should be reduced in light of Plaintiff's indigence.

In the well-reasoned opinion in *Jessup,* the district court reduced the $36,800 cost award by 45% against the non-prevailing plaintiff who survived on Social Security disability benefits and food stamps of $810 per month, had no bank accounts, vehicles, real estate, insurance, or any other meaningful assets and, as a result of her mental illness, had no foreseeable prospect of sustainable employment. 2011 WL 294417, at *1. As the district court stated in deciding not to waive the cost award even though the plaintiff lived "essentially month-to-month and ha[d] no prospect for employment in the foreseeable future":

> Despite the fact that "there is a strong presumption that the prevailing party will be awarded costs," *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007), there is little or no benefit to the Defendants in awarding them a cost award so large that there appears to be no possibility that Defendants could recover from Plaintiff. On the other hand, the Court of Appeals' decisions dictate that in the case of an indigent non-prevailing party, a court cannot decline an award of costs in its entirety because of the importance of deterring litigants from pursuing costly, non-meritorious claims.

*Id.* at *1 (citing *Chapman*, 229 F.3d at 1039; *Pickett*, 149 F. App'x at 832; quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982) ("no fee will provide no deterrence")).

Plaintiffs contend that "courts" in the Middle District have denied awards of costs against a litigant with a demonstrated inability to pay. However, Plaintiffs cite a single case in which the court waived the $497 in costs sought against an indigent claimant. Doc. 93 at 4 (citing *Barrington v. Lockheed Martin Corp.*, No. 6:05-cv-1601-Orl-KRS, 2007 WL 1303032, *2 (M.D. Fla. 2007) (declining to award $497 in costs against a plaintiff who had filed an *in forma pauperis* application, had asserted factually and legally difficult, not frivolous, claims, and had not acted in bad faith) (Spaulding, M.J.)). The second case Plaintiffs cite actually refutes their point because the court in

*Brown* did not completely waive the cost award, but reduced it by 50% for plaintiffs who lived in low-income subsidized housing. 2008 WL 203382 at *2.

Based on the reasoning in the cases cited above including *Jessup* and *Brown*—which involved multiple plaintiffs suing a single defendant for injunctive relief, similar to the facts present in this case—the Court finds a reduction of 50% to be the appropriate amount to apply for the costs of the prevailing Defendant taxed against the Plaintiffs in this case. *See, e.g., Jessup*, 2011 WL 294417, *1 (reducing costs by 45%); *Brown*, 2008 WL 203382, at *2 (reducing costs by 50%).

### C.  Filing of a Bill of Costs versus a Motion

To the extent Plaintiffs argue that costs cannot be awarded in the absence of a *motion* to tax costs as opposed to a bill to tax costs, they are incorrect. Costs are to be taxed by the Clerk upon presentation of a bill of costs on fourteen days notice. Fed. R. Civ. P. 54(d)(1).[14] Costs taxed by the Clerk may be reviewed on motion by any party served within the following seven days. Fed. R. Civ. P. 54(d)(1). To the extent Plaintiffs argue that Defendant's Bill of Costs was too bare bones and included "line items" or "categories" without further explanation, Defendant used the form provided by the Clerk of Court for the Middle District of Florida, which was developed by the Administrative Office of the United States Court in 2009.[15] Defendant attached to the Bill of Costs the Declaration of Jeremy M. White, Esq., in support, which sets forth the nature and itemization of each category of fees sought (which are discussed at length below). Doc. 87.

---

[14]Plaintiffs also argue that the Local Rules require a "motion" however, the Rule states that "all claims for costs or attorney's fees preserved by appropriate pleading or pretrial stipulation shall be asserted by separate *motion or petition* filed not later than fourteen (14) days following the entry of judgment." Local Rule 4.18 (emphasis added). The bill of cost constitutes a "petition."

[15]*See* http://www.flmd.uscourts.gov/forms/forms_policies.htm (Bill of Costs form, AO 133).

In this case, the judgment was entered in favor of Defendant on September 26, 2016, and Defendant timely filed its Proposed Bill of Costs on October 11, 2016. Docs. 86, 87. The Clerk taxed the Bill on October 25, 2016. Doc. 89. Plaintiffs filed their Motion to Review Costs on November 1, 2016. Doc. 90. Defendant's Bill of Costs was timely, having been filed within the allowable[16] number of days following entry of the judgment. Thus, Plaintiffs' citation to cases rejecting belatedly filed bills of cost or motions for costs are inapposite. *See, e.g., Mercado v. HRC Collection Ctr.*, 2013 WL 6085221, *1-2 (M.D. Fla. 2013) (motion to tax costs denied when filed six weeks after judgment) (cited in Doc. 97 at 9).

### D. Calculation of Bill of Costs

Plaintiffs contend[17] that many of the costs which Defendant seeks to have reimbursed are not recoverable under the statute or are not properly supported in the Bill, which they seek to have reduced from the original $3,966.78 by $1,802.18 to $2,164.60. Doc. 90 at 21. Defendant contends that it is entitled to recover its costs as taxed by the Clerk, but has voluntarily adjusted its request for certain costs such that the reduced total is $3,285.70. Doc. 92.

Pursuant to 28 U.S.C. § 1920, the prevailing party is entitled to recover fees of the clerk or for docketing; fees for service of process; fees of the court reporter for transcripts necessarily obtained for use in the case; and fees for printing, copies, and witnesses. 28 U.S.C. § 1920. The burden is on Defendant to produce evidence of such expenses:

> The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case. *Corsair Asset Management, Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D. Ga. 1992); *Desisto College*, 718 F.Supp. at

---

[16]The fourteenth day (October 10th) fell on a Court holiday, thus the time was extended until the next day. Fed. R. Civ. P. 6(1)(C).

[17]Plaintiffs incorporated by reference their arguments from the Motion to Review Clerk's Action on Bill of Costs, Objections to Bill of Costs, and Incorporated Memorandum. Doc. 97 at 11 (citing Doc. 90 at E2 to E9). Because the Report and Recommendation did not address the individual costs, no objections were filed to treatment regarding individual costs.

914. A prevailing party may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose the copies were made. *Corsair Asset Management, Inc.*, 142 F.R.D. at 353.

*Helms v. Wal-Mart Stores, Inc.,* 808 F. Supp. 1568, 1570 (N.D. Ga. 1992), *aff'd*, 998 F.2d 1023 (11th Cir. 1993).

### 1. *Pro Hac Vice* Fees

Plaintiffs objected to Defendant's recovery of what it categorizes as "clerk's fees" which are typically filing fees, but in this case are actually the fees Defendant paid for *pro hac vice* admission for out of state counsel to represent it, even though Defendant also had local counsel. Doc. 90 at 9 (citing *Fulwood v. Capital One Auto Finance, Inc.,* 2011 WL 2148415, at *1 (M.D. Fla. 2011); *Lane v. Accredited Collection Agency Inc.*, 2014 WL 1685677, at *10 (M.D. Fla. 2014)). Defendant has since withdrawn these costs (Doc. 92 at 13) and $450 will be deducted from the final fee calculation.

### 2. *Service Fees*

Plaintiffs object to Defendant's reimbursement for costs related to numerous service-related expenses which Defendant proposes to allocate pro rata to various cases; these include costs which are associated with service on four non-party witnesses. The fees for service and subpoenas are generally recoverable; however, 28 U.S.C. § 1921 limits these service fees to $65 for each individual. *See Hooks v. Geico Gen. Ins. Co., Inc.,* 2015 WL 9595402, at *3 (M.D. Fla. 2015), *adopted,* 2016 WL 25936 (M.D. Fla. 2016) (limiting recoverable service fees to $65.00 per subpoena); *Powercore, Inc. v. W. Sur. Co.*, 2015 WL 3621376, *2 (M.D. Fla. 2015) (same). Defendant has withdrawn its fee request for individual service fees in excess of $65, which aggregate to $260. Accordingly, the portion attributed to Plaintiff will be reduced to $6.19, or $260 divided by 42 (the number of active Plaintiffs' cases).

### 3.   Depositions of Defendant Witnesses and Plaintiff's Next Friend

Pursuant to 28 U.S.C. § 1920(2), the prevailing party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Plaintiffs do not argue that the depositions listed in the Bill of Costs were not "necessarily obtained" for use in the case. Instead, Plaintiffs object to the taxation of ancillary deposition charges for "e-transcript fees" and "rough drafts" related to the depositions of certain individuals and Plaintiffs' Next Friend. Plaintiffs contend these charges are not recoverable because they were incurred merely for the convenience of counsel. Doc. 90.

Defendant argues that these e-transcript and rough draft versions are not "ancillary charges incurred for the convenience of counsel" because the transcript invoices reflect they are the *only* charges for which Defendant seeks reimbursement for these depositions. Doc. 92 at 8-9. Defendant argues that these charges were necessary to obtain these transcripts from the court reporter Plaintiffs hired, thus, they are properly taxable. As Defendant points out the invoices for three of the depositions (Glader, Jones, and Sweetman) contain a single charge for an "electronic transcript" or a "rough draft" which appears to be the sole way the deposition was provided and these costs will not be deducted. As to costs for "rough" transcripts for certain other depositions, Defendant contends that they were not merely for the convenience of counsel; rather, each of the rough transcripts was "necessarily obtained for use in [this] case" because of the compressed time frame within which the parties took and defended these depositions. "If an expedited or rough transcript was necessary, the cost is recoverable." *Procaps S.A. v. Patheon Inc*., No. 12-24356-CIV, 2016 WL 411017, at *3 (S.D. Fla. Feb. 2, 2016). Defendant contends that, during a three-month period, the parties took and defended more than 90 depositions, which included 28 depositions of Disney's 30(b)(6) witnesses in one week (from January 25, 2016, to February 1,

2016), and Defendant contends it needed the rough transcripts to prepare for subsequent depositions which took place nearly every day during this period. Based on the extremely short period of time for the depositions, the Court finds it was reasonably necessary for Defendant to obtain the rough transcripts, and they are taxable.

Several deposition invoices contain charges for e-transcript fees, shipping and handling, and processing and delivery, which, Defendant argues, were charged by the court reporting company for its services in preparing and delivering a deposition transcript necessarily incurred in order to receive a copy of the transcript. Doc. 92 at 8 (citing *e.g.*, *Smith v. Conner*, No. 8:12-cv 52-T-30AEP, 2014 WL 1652419, at *1 (M.D. Fla. Apr. 23, 2014) ("[T]he court reporter's appearance fee and postage and handling fees are properly taxable as costs.")). Generally, "[a]ttendance fees of the court reporter or per diem, processing and handling, and delivery fees are part of the court reporter's fee and are taxable." *Ferguson v. Bombardier Serv. Corp.*, No. 8:03-cv-539-T-31DAB, 2007 WL 601921, at *3 (M.D. Fla. Feb. 21, 2007). The Court will not deduct these fees from the deposition costs.[18]

### 4.   Printing and Copies

Defendant seeks taxation of the apportionment of $17,776.01 in printing costs spread over the 42 active cases, *i.e.,* $423.06; it has submitted in support invoices for "document production print jobs" and a spreadsheet itemizing the law firm's "internal duplicating costs" and production. Doc. 87-6. Defendant argues that there is sufficient detail showing that these costs were necessarily incurred in connection with depositions and production of responsive documents in the 42 cases based on the declaration of its counsel and in the exhibits. Mr. White states that the copies were

---

[18]Defendant has apparently voluntarily withdrawn a request for exhibit scanning charges of $11.20 following Plaintiffs' objection to it. Doc. 92 at 13; Doc. 90 at 15.

"produced in connection with the production of documents sought by Plaintiffs in discovery, service and court copies of motions and briefs, and for use at depositions." Doc. 87-1 ¶ 12.

Plaintiffs contend that the printing of documents and electronically stored information is performed for convenience of counsel, and is not taxable. Doc. 90 at 16 (citing *Ballestero v. Fairfield Resorts, Inc.*, No. 6:06-cv-1153-Orl-28KRS, 2008 WL 5111100, *2-3 (M.D. Fla. Dec. 4, 2008); *Maronda Homes, Inc. of Florida v. Progressive Express Ins. Co.*, No. 6:14-cv-1287-Orl-31TBS, 2015 WL 6468191, at *4 (M.D. Fla. Oct. 26, 2015) (general description of types of issues or activities for which printing, copying or scanning charges were incurred is inadequate to support taxation of costs); *Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2012 WL 3886026, at *2 (M.D. Fla. Sep. 6, 2012) (costs denied where "defendant [did] not explain why the conversion and printing of all of the plaintiff's electronically produced discovery was necessary")).

Defendant contends that, as the prevailing party, it may recover printing and e-discovery costs so long as it "could reasonably have believed" they were necessary for the litigation, and the copies of documents need not have been "introduced into evidence or submitted to the court." Doc. 92 at 8-10 (citing *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000); *Sharp v. City of Palatka*, No. 3:06-cv-200-J-TEM, 2008 WL 4525092, at *3 (M.D. Fla. Oct. 6, 2008) (internal quotation marks omitted)). Mr. White "calculated the costs Disney incurred for the printing of documents in connection with the production of documents Plaintiffs sought in discovery, service and court copies of motions and briefs, and for use at depositions" based on his former firm's "in house printing diary" and identified these based on the date. Doc. 87-1 ¶ 12, 87-6. Defendant incurred costs associated with preparing documents for purposes of depositions during the same timeframe when the parties were taking and defending dozens of depositions.

Under § 1920(4), photocopying "necessarily obtained for use in the case" is compensable. *Dillon v. Axxsys Intern., Inc.*, No. 8:98-cv-2237-T-23TGW, 2006 WL 3841809, at *7 (M.D. Fla. Dec. 19, 2006). "The court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *U.S.E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Although a prevailing party may not recover for general photocopying, *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996), photocopying costs "attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits and documents prepared for the Court's consideration are recoverable." *Desisto College, Inc. v. Howey-in-the-Hills,* 718 F.Supp. 906, 913 (M.D. Fla. 1989), *declined to follow on other grounds by U.S.E.E.O.C. v. W & O*, 213 F.3d 600, 623 (11th Cir. 2000) ("copies attributable to discovery are a category of copies recoverable under § 1920(4)"); *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1338 (S.D. Fla. 2009) (the prevailing party may be awarded costs for copies of correspondence with opposing counsel, copies for documents electronically filed with the court and hand-filed with the court, and copies retained by counsel).

Establishing entitlement to photocopying expenses is the burden of the prevailing party. *See Desisto College*, 718 F.Supp. at 910 n.1; *Fulton Fed. Savings & Loan Assoc. of Atlanta v. Amer. Ins. Co.*, 143 F.R.D. 292, 300 (N.D. Ga. 1991) (explaining that the party seeking to recover photocopy costs must come "forward with evidence showing the nature of the documents copied and how they were used"). However, the prevailing party is not required to account for each photocopy because that would make it impossible economically to recover those expenses. *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991); *Procaps S.A.*, 2016 WL 411017, at*6 (holding that, although the prevailing party must

present evidence regarding the use or intended use of the copies in general, it need not explain the need for each particular copy).

The Court is well aware of the voluminous number of copies required in Plaintiffs' 42 active cases. The Court received and has stored the rough equivalent of 20 cases of copy paper provided as courtesy copies for the summary judgment motions alone. Twenty cases of paper is approximately 100,000 pages. (500/ream x 10 reams/case x 20 cases). At $.08 per page charged by Defendant, which the Court finds to be a reasonable amount charged for copies, the copying of the summary judgment documents *alone* would total $8,000. When extrapolated for the one hundred or so other docket entries in 42 cases collectively, $17,776 does not appear to be an unreasonable amount; thus, $17,776/42 or $423.23 for Plaintiffs' apportioned amount, is not unreasonable.

Defendant argues, with regard to e-discovery, that its costs for printing electronically produced/stored information were "necessarily obtained" within the meaning of § 1920. As Mr. White stated in his Declaration, certain e-discovery costs are taxable including where a party:

> (a) copies responsive documents to production media; (b) converts documents to a uniform production format (such as TIFF images); (c) is required to create an image of the original source first and then apply other techniques to extract documents; or (d) creates load files in connection with the requested production.

Doc. 87-1 ¶ 13. Mr. White consulted with the e-discovery vendor, UnitedLex, and calculated the costs Defendant "necessarily incurred" in producing documents by identifying on the bills which jobs correlated to the taxable categories; Defendant has provided a spreadsheet itemizing these e-discovery services which total $10,974.75 incurred for the 42 cases, of which $258.81 has been allocated to Plaintiff's case ($10,974.75/42). Doc. 87-7. The Exhibit (Doc. 87-7) shows that the costs were incurred during the discovery period, lists the relevant tasks, and a description of the e-discovery tasks that were done including: "export files to PDF format," "run multiple productions

by individual plaintiff," "run first three productions . . . and copy exported results for distribution to opposing counsel," and "finalize production of documents in 37 matters." Doc. 87-7. Defendant points out that these tasks and others listed in the supporting invoices were necessary to prepare and generate the document productions used in this case and are taxable.

Plaintiffs state several other objections specific to the tasks listed in the UnitedLex invoices: the "Relativity" system data "was never shared with Plaintiffs;" "Plaintiffs did not request that the documents be coded;" and "documents were produced to Plaintiffs in the least user-friendly fashion possible." Doc. 90 at 17-19. Defendant argues that Plaintiffs' objections are irrelevant and do not provide a basis for denying costs, most importantly because "Relativity" is the e-discovery software platform used by UnitedLex to generate Defendant's productions and could not have been "shared" with Plaintiffs, and whether a party "shared" its e-discovery software or the coding used by the e-discovery vendor as part of the process of generating document productions is not a factor in determining whether costs are taxable. Defendant argues that each item reflects tasks necessarily performed in connection with its document production obligations.

Defendant's e-discovery tasks do appear to be in the nature of those allowed by other courts as e-discovery costs for "duplicat[ing] an electronic document in as faithful and complete a manner as required" to comply with discovery obligations, "copying responsive documents to production media," "formatting," "creat[ing] an image of the original source first and then apply[ing] special techniques," and "creat[ing] 'load files'" that contain relevant production information. *See Procaps*, 2016 WL 411017, at *12-13. Both of the cases cited by Plaintiffs in support of their argument that e-discovery costs are not recoverable are inapposite to this case. The prevailing party in each cited case was held to have failed to adequately support its request to recover costs for printing electronic discovery. *See Gray*, 2012 WL 3886026, at *2, *Maronda Homes*, 2015 WL

6468191, at *4. Moreover, Plaintiffs' arguments fail to fully reflect the advent of electronic filing systems and the widespread production of discovery as electronically stored information.

## IV.    Conclusion & Summary of Calculations

The Court accepts the Bill of Cost amounts as revised by Defendant in its Response to Plaintiffs' Motion to Review Bill of Costs. *See* Doc. 92.

|  | Defendant's Amended Bill (Doc. 82) | *Plaintiff's Proposed Reductions (Doc. 90)* | *Amounts withdrawn[19] by Defendant (Doc. 92)* | Court's Taxation of Costs |
|---|---|---|---|---|
| Fees of the Clerk | $450.00 | $450.00 | $450.00 | $0.00 |
| Fees for Service (< $65) | $44.86 | $38.67 | $38.67 | $6.19 |
| Deposition Transcripts | $2608.84 | $450.43 | $11.20 | $2,597.64 |
| Printing | $423.06 | $423.06 | $0.00 | $423.06 |
| Copies (e-discovery) | $258.81 | $258.81 | $0.00 | $258.81 |
| Postage/shipping[20] | $181.21 | $181.21 | $181.21 | $0.00 |
| **Total** | $3966.78 | $1,802.18 | $681.08 | **$3,285.70** |
| **50% reduction** | -- | -- | -- | **$1,642.85** |

Therefore, it is **ORDERED** as follows:

1.    Defendant's objections to the Report and Recommendation filed February 2, 2017 (Doc. 96), are sustained in part and overruled in part as set forth herein.

2.    Plaintiffs' Motion to Review Clerk's Action On Bill Of Costs (Doc. 90), is hereby **GRANTED in part** and **DENIED in part**.

3.    The Clerk is **DIRECTED** to enter a cost judgment providing that Defendant Walt Disney Parks and Resorts US, Inc., recover from Plaintiffs C.M.J and D.M.J, , jointly and severally, by and through D.L.J., as Next Friend, Parent and Natural Guardian, costs in the amount of **$1,642.85**.

---

[19]Defendant revised its request for certain costs on November 17, 2016, following Plaintiff's Motion to Review the Bill of Costs. Doc. 92 at 13.
    [20]Defendant has withdrawn its request for postage and shipping costs, which the Court generally regards as overhead.

**DONE** and **ORDERED** in Orlando, Florida on July 18, 2017.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties